CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 16 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BRIAN WISHNEFF & ASSOCIATES,  )
                Plaintiff,  )
                            )    Civil Action No. 7:15-cv-00411
v.                           )
                            )
10 SOUTH STREET ASSOCIATES, LLC,  )    By:    Hon. Michael F. Urbanski
                            )              United States District Judge
                Defendant.  )

## MEMORANDUM OPINION

This is an action for breach of contract and quantum meruit brought by plaintiff Brian Wishneff & Associates ("Wishneff") against 10 South Street Associates, LLC ("10 South Street") arising out of an agreement to perform tax credit consulting services for a real estate development project in New York City. Presently pending before the court is 10 South Street's motion to dismiss for lack of personal jurisdiction.

When a court considers "a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014) (citing Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009)). In determining if a plaintiff has met this burden, a court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).

When viewed in this light, the facts of this case support the exercise of personal jurisdiction over 10 South Street. 10 South Street entered into a contract it knew would be performed by

1

Wishneff in Virginia and engaged in hundreds of communications relating to the contract with Wishneff in Virginia over a period of years. Accordingly, the motion to dismiss for lack of personal jurisdiction (ECF No. 19) will be **DENIED**.

## I.

A federal court may exercise personal jurisdiction if two conditions are satisfied. First, the state's long-arm statute must provide for jurisdiction in the circumstances presented. Second, the exercise of jurisdiction must be consistent with the Due Process Clause of the Fourteenth Amendment. Ellicott Mach. Corp., Inc. v. John Holland Party, Ltd., 995 F.2d 474, 477 (4th Cir. 1993). The Fourth Circuit has interpreted Virginia's long-arm statute, Virginia Code § 8.01-328.1, as being coextensive with the Due Process Clause. See English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) (citing Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir. 1982)). Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry when Virginia is the forum state.

> Fairness is the touchstone of the jurisdictional inquiry, and the 'minimum contacts' test is premised on the concept that a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there. In the context of specific jurisdiction, the relevant conduct must have only such a connection with the forum state that it is fair for the defendant to defend itself in that state. We do more than formulaically count contacts, instead taking into account the qualitative nature of each of the defendant's connections to the forum state. In that vein, a single act by a defendant can be sufficient to satisfy the necessary quality and nature of such minimal contacts, although casual or isolated contacts are insufficient to trigger an obligation to litigate in the forum.

Tire Eng'g v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012) (internal quotations and citations omitted).

The question, then, is whether defendant has sufficient "minimum contacts with [Virginia] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

2

justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The "minimum contacts" test requires that defendants purposefully avail themselves of the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). This test aims to ensure defendants are not "hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," id., and affords defendants protection "from having to defend [themselves] in a forum where [they] should not have anticipated being sued." Consulting Eng'rs, 561 F.3d at 277 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Determining the reach of judicial power over persons outside of a state's borders under the International Shoe standard is undertaken through consideration of two categories of personal jurisdiction—general and specific. Daimler AG v. Bauman, __ U.S. __, __, 134 S. Ct. 746, 754 (2014). General jurisdiction requires a substantial connection to the forum; the defendant's contacts with the forum must be so continuous and systematic as to render him essentially "at home." Id. at 754, 760 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, __ U.S. __, __, 131 S. Ct. 2846, 2851–54 (2011)). Specific jurisdiction exists in a suit "arising out of or related to" the defendant's contacts with the forum. Id. at 754.

## II.

10 South Street is a Delaware limited liability company headquartered in New York City. One of its members is a resident of New York; the other is a resident of Florida. Wishneff is a Virginia limited liability company with its principal place of business in Roanoke, Virginia. Both of its members are Virginia residents.

On October 26, 2009, 10 South Street and Wishneff executed the Battery Maritime Building Historic Tax Credit Agreement ("Agreement"). ECF No. 28-4, Ex. C. The Agreement explains that 10 South Street was designated by the City of New York for potential renovation of the former Battery Maritime Building ("the Project") in Manhattan. Wishneff is obligated by the Agreement to

3

manage the Project's tax credit process, including solicitation of financing from Historic Tax Credit ("HTC") investors. As compensation, Wishneff receives a portion of the financing it secures. The Agreement is governed by New York law and was consummated in New York.[1]

Before entering the Agreement, Wishneff worked for Dermot Co., an entity related to 10 South Street. ECF No. 24-1, at ¶ 4. Brian Wishneff averred that "[a]s a result of Wishneff's work for Dermot, 10 South asked Wishneff whether Wishneff could assist 10 South in obtaining Historic Tax Credit incentives on the BMB [Battery Maritime Building] Project." ECF. No. 24-1, at ¶ 4. The parties first discussed the Project on January 18, 2008, when Brian Wishneff emailed an employee of 10 South Street, Kristin Neil, a copy of a news article about the Battery Maritime Building renovation and asked, "Is there a tax-credit opportunity here that could help bring additional equity to the deal?" ECF No. 28, Ex. A.[2] On March 7, 2008, Brian Wishneff emailed Alex Adams, another employee of 10 South Street, and proposed a meeting with 10 South Street in New York City, which occurred on March 11, 2008. ECF No. 28, Ex. B.

In addition to the negotiation that occurred in New York City, the parties corresponded by telephone and email to negotiate the Agreement. In his affidavit, Brian Wishneff stated that "I negotiated the terms of the Agreement, primarily with Steve Benjamin of 10 South. The vast majority of the negotiations regarding the Agreement occurred by telephone and email with me

---

[1] Exhibit C of ECF No. 28-4 shows that Brian Wishneff, President of Brian Wishneff & Associates, signed the agreement and then emailed it to Stephen Benjamin of 10 South Street for his signature.

[2] The January 18, 2008 email was brought to the court's attention on November 13, 2015, attached as Exhibit A to the Reply Affidavit of Stephen Benjamin. ECF No. 28-1. At the hearing on this matter, Wishneff did not take issue with this email. Given the potentially conflicting averment in Brian Wishneff's earlier filed affidavit that "[a]s a result of Wishneff's work for Dermot, 10 South asked Wishneff whether Wishneff could assist 10 South in obtaining Historic Tax Credit incentives on the BMB Project," ECF. No. 24-1, at ¶ 4, the court issued an order on January 11, 2016 directing the parties to advise whether, in fact, the January 18, 2008 email from Brian Wishneff to Kristin Neil was the first communication between the parties on the issue of the Battery Maritime Building project. ECF No. 33. On January 13, 2016, counsel for Wishneff wrote the court and advised that "plaintiff Brian Wishneff & Associates does not dispute that the January 18, 2008 e-mail from Brian Wishneff to Kristin Neil was the first communication between the parties regarding the possibility of Brian Wishneff & Associates performing services relating to the Battery Maritime Building." ECF No. 34.

4

while I was in my office in Roanoke. Mr. Benjamin called me and emailed me on numerous occasions at my Roanoke office during these negotiations." ECF No. 24-1, at ¶ 5.[3]

During the negotiation of the Agreement, 10 South Street's Benjamin expressed reservations about Wishneff's ability to perform its services for a New York project from Virginia, but Wishneff convinced 10 South Street that it could competently perform its work in Virginia. ECF No. 24-1, ¶ 6; ECF No. 24-2, ¶ 9. The executed Agreement does not designate a place of performance, but it lists Wishneff's address as 30 Franklin Road, Roanoke Virginia. As to subsequent activities, Brian Wishneff's affidavit states that "between 2009 and 2012, 10 South sent Wishneff numerous e-mails related to the agreement, and communicated with Wishneff by telephone on multiple occasions, while Wishneff was located in Virginia. The number of email and telephonic communications between the parties regarding the BMB project exceeds 200 for each mode of communication." ECF No. 24-1, ¶ 7; ECF No. 24-2, ¶ 10.

### III.

These facts do not support the exercise of personal jurisdiction over 10 South Street on general jurisdiction grounds. General jurisdiction is proper when a corporation's "'affiliations with the [forum] State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" Daimler, ___ U.S. at ___, 134 S. Ct. at 761 (quoting Goodyear, ___ U.S. at ___, 131 S. Ct. at 2851). The paradigm bases of general jurisdiction are a corporation's principal place of business and place of incorporation. Id. at 760. In an "exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State" Id. at 761 n.19.

---

[3] At the time Wishneff filed the Brian Wishneff affidavit, it also filed a proposed Second Amended Complaint containing new factual allegations in ¶¶ 8, 9, and 10 tracking the Brian Wishneff affidavit. ECF No. 24-2. For clarity's sake, the court will grant Wishneff leave to amend and order that the Second Amended Complaint be deemed filed as of October 30, 2015. By the same token, the court considers 10 South Street's response filed November 13, 2015 as a motion to dismiss the Second Amended Complaint.

5

Wishneff has not alleged facts indicating that 10 South Street is "at home" in Virginia. 10 South Street is a Delaware limited liability company and its principal place of business is in New York. None of 10 South Street's members are located in Virginia. Agents of 10 South Street have never entered Virginia in their official capacity, and 10 South Street does not own property in Virginia. ECF No. 19-2, at ¶¶ 4-5. Even before Daimler, general jurisdiction often turned on whether a defendant was physically present in the forum state. See ESAB Group v. Centricut, Inc., 126 F.3d 617, 624 (4th Cir. 1997). After Daimler, "it is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014). The Daimler Court ruled general jurisdiction was improper even though the defendant had "multiple California-based facilities" and was the "largest supplier of luxury vehicles to the California market." 134 S. Ct. at 761-62. Here, 10 South Street's contacts with Virginia are far less significant, affording no basis for the exercise of general jurisdiction over it.

## IV.

The issue of specific jurisdiction is a closer one. In assessing specific jurisdiction, courts employ a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant comports with the requirements of due process. Courts evaluate "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Universal Leather, 773 F.3d at 559 (quoting Tire Eng'g, 682 F.3d at 301-02).

The first part of the test— purposeful availment— embodies International Shoe's minimum contacts requirement. The purposeful availment inquiry is grounded on the traditional due process concept of minimum contacts, which itself is based on the premise that "a corporation that enjoys

6

Case 7:15-cv-00411-MFU-RSB   Document 35   Filed 02/16/16   Page 6 of 14   Pageid#: 220

the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." Tire Eng'g, 682 F.3d at 301 (citation and internal quotation marks omitted); see Int'l Shoe Co., 326 U.S. at 320 (examining whether the defendant has "establish[ed] sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which [the defendant] has incurred there"). Thus, in determining whether a foreign defendant has purposefully availed itself of the privilege of conducting business in a forum state, courts look to whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989) (quoting World–Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

The purposeful availment analysis is a flexible one and depends on a number of factors that courts consider on a case-by-case basis. In the business context, those factors include, but are not limited to, an evaluation of:

> (1) whether the defendant maintains offices or agents in the forum state;
>
> (2) whether the defendant owns property in the forum state;
>
> (3) whether the parties contractually agreed that the law of the forum state would govern disputes;
>
> (4) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
>
> (5) whether the defendant reached into the forum state to solicit or initiate business;
>
> (6) whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

7

(7) the nature, quality, and extent of the parties' communications about the business being transacted; and

(8) whether the performance of contractual duties was to occur within the forum.

Id. (internal citations omitted).

The first four factors plainly favor 10 South Street, as it has no offices, agents, or property in Virginia. The Agreement is expressly governed by New York law, and 10 South Street's representatives never entered Virginia to discuss the Agreement with Wishneff.

The fifth factor also weighs in favor of 10 South Street. It is undisputed that the parties' first contact regarding the Project occurred on January 18, 2008 when Wishneff emailed 10 South Street a news article reporting the Battery Maritime Building's renovation and asked, "Is there a tax-credit opportunity here that could help bring additional equity to the deal?" ECF No. 28, Ex. A. 10 South Street did not reach into Virginia to solicit Wishneff's tax credit consulting services on the Battery Maritime Building project; rather, it was Wishneff's January 18, 2008 email to 10 South Street that ultimately led to the Agreement at issue in this case.

Regarding the sixth factor, there is no evidence that 10 South Street has deliberately engaged in significant or long-term business activities in Virginia other than its dealings with Wishneff. Merely contracting with a resident of the forum does not subject a defendant to personal jurisdiction. Burger King, 471 U.S. at 478; Initiatives Inc. v. Korea Trading Corp., 991 F. Supp. 476, 479 (E.D. Va. 1997) (citing Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127-28 (4th Cir. 1986)). Instead, courts consider the frequency, size, and duration of the defendant's business activity in the forum. See, e.g., Universal Leather, 773 F.3d at 561. Other than communicating with Wishneff, there is no evidence that 10 South Street has conducted any business in Virginia.

8

The seventh and eighth factors favor Wishneff. The seventh factor requires the court to evaluate the nature, quality, and extent of the parties' communications about the business being transacted. Brian Wishneff estimates that the parties exchanged hundreds of emails and spoke on the telephone a like number of times during the course of the Project. ECF No. 24-1, at ¶ 7; ECF No. 24-2, at ¶ 10. "Correspondence alone, however, is not sufficient to establish minimum contacts that satisfy due process." Hirsch v. Johnson, No. 1:14cv332, 2014 WL 2916748, at *5 (E.D. Va. June 26, 2014); Superfos Invest., Ltd. v. Firstmiss Fertilizer, Inc., 774 F. Supp. 393, 397-98 (E.D. Va. 1991). Rather, the court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether defendant has "purposely established minimum contacts within the forum." Burger King, 471 U.S. at 479.

Wishneff's performance under the Agreement, and 10 South Street's knowledge of the same, is the strongest factor supporting the exercise of personal jurisdiction. To be sure, the Agreement does not designate a place of performance. However, Brian Wishneff averred that 10 South Street's Benjamin expressed skepticism regarding Virginia-based "Wishneff's ability to perform its services in Virginia. Wishneff convinced 10 South that it was able to perform the work from Virginia, however, and 10 South consequently agreed to the contract." ECF No. 24-1, at ¶ 6; ECF No. 24-2, at ¶ 9. Thus, the question of specific jurisdiction turns on whether 10 South Street's email and telephone correspondence with Wishneff over a period of years, combined with 10 South Street's knowledge that Wishneff would perform its historic tax credit work in Virginia, is sufficient to support the exercise of personal jurisdiction over 10 South Street. "[K]nowledge that a plaintiff will perform work in a forum may satisfy the purposeful availment requirement in combination with other factors." Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 683 (M.D.N.C. 2011) (citing English & Smith v. Metzger, 901 F.2d 36, 39-40 (4th Cir. 1990)).

9

In England & Smith, Michael Metzger, a California lawyer, reached into Virginia to associate David Smith as counsel in a forfeiture case pending in the Northern District of California. All of Smith's performance on the ensuing contingent fee agreement was done in Virginia, and the parties engaged in numerous calls and letters between California and Virginia over the course of the next year. In determining that minimum contacts existed, the Fourth Circuit noted that "[t]he relevant question is not where the contacts predominate, but only whether enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfied due process." Id. at 39. The court concluded that:

> The purposeful direction of activities toward the forum is present here. Metzger initiated contact with Smith in Virginia, entered into contracts with Smith by virtue of action taken in Virginia, and carried on a continuing relationship with Smith in Virginia while the two worked on the Pemberton forfeiture case. Metzger's intentional contacts with the State were enough that he could 'reasonably anticipate being haled into court there,' World-Wide Volkswagen Corp. v. Woodson, 44 U.S. 286, 297 (1980), and we are of the opinion that the district court's exercise of jurisdiction did not offend due process.

901 F.2d at 40.

With one exception, the facts of English & Smith mirror those presented here. Just as was the case with Metzger and Smith, Wishneff and 10 South Street contracted for services to be performed by Wishneff in Virginia. To be sure, the object of the contracted-for services – the forfeiture action in English & Smith and the Manhattan renovation work here – were outside of the forum. In each case, however, the parties carried on a continuing relationship for a significant period of time involving many communications concerning plaintiff's contractual performance in Virginia.

The difference between the facts of English & Smith and those presented here, of course, is that Metzger reached into Virginia to contact Smith. In contrast, Wishneff first made contact with 10 South Street on the Battery Maritime Project by emailing Kristin Neil in New York. Is this

10

factual distinction material? Yes. A number of courts have found the initiation of the contact to be a significant factor in the jurisdictional calculus. See, e.g., Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 452 (4th Cir. 2000) (noting that plaintiff Virginia company initiated the contractual relationship with defendant in Ohio); Worldwide Ins. Network, Inc. v. Trustway Ins. Agencies, LLC, No. 1:04-cv-00906, 2006 WL 288422, *6 (M.D.N.C. Feb. 6, 2006) (citing Diamond Healthcare for the proposition that "the Fourth Circuit has given great weight to the question of who initiated the contract between the parties."); Sea-Roy Corp. v. Parts R Parts, No. 1:04cv00906, 1996 WL 557857, at *5 (M.D.N.C. July 30, 1996) ("[P]ersonal jurisdiction cannot be exercised over a foreign supplier who has no contact with the forum other than being solicited to contract by an individual in the forum.").

While the initiation of the relationship is a material factor to be considered, the court does not find it to be determinative of the jurisdictional question under the particular facts of this case. In particular, given the vast scope of the communication between Wishneff and 10 South Street, the years-long duration of the relationship and the critical fact that 10 South Street knew that Wishneff's performance under the Agreement would take place in Virginia, there is a sufficient nexus between 10 South Street and Virginia upon which to base specific personal jurisdiction over this contractual dispute.

As to the second part of the specific personal jurisdiction test, the court must next assess whether Wishneff's claims arose out of 10 South Street's actions directed at Virginia. "There is an important distinction, however, between alleged contacts with a forum arising simply from a plaintiff's location and promise to perform some services there, on the one hand, and situations where a defendant has purposefully directed activities toward the state, on the other hand." Pan-Am. Prods., 825 F. Supp. 2d at 683. Here, the court concludes that 10 South Street's knowledge that Wishneff's performance would take place in Virginia, combined with the length of the

11

relationship and large number of communications with Wishneff in Virginia, is sufficient to meet this element. Unlike Pan-American, Sea-Roy, Worldwide Insurance and Diamond Healthcare, this is not a case where the bulk of Wishneff's performance would take place in New York with a smattering of activity in Virginia. Rather, Wishneff alleges that its performance of the Agreement was to take place in Virginia, and that Wishneff's performance of the contract in Virginia was of concern to 10 South Street. Under these specific facts, it cannot be said that 10 South Street's lengthy and voluminous dealings with Wishneff on the agreement were not directed at Virginia. Wishneff alleges breach of contract based on actions it took in Virginia performing the Agreement. 10 South Street's nonpayment for these actions forms the genesis of the dispute. Wishneff essentially alleges that 10 South Street engaged in substantial and ongoing correspondence and collaboration with it in Virginia over a period of years on the Battery Maritime Project. As opposed to an isolated interaction, such actions "reflect a purposeful effort by [10 South Street] to transact business with [Wishneff] in the Commonwealth." CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 296 (4th Cir. 2009). As such, the second part of the minimum contacts test is satisfied.

The third part of the minimum contacts test is whether the exercise of personal jurisdiction is constitutionally reasonable. Courts employ five factors to determine if exercising personal jurisdiction is constitutionally reasonable: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; (5) the shared interest of the several States in furthering fundamental substantive social policies. Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113 (1987) (citing Worldwide Volkswagen, 444 U.S. at 292). The fact that 10 South Street has no offices or employees in Virginia does not necessarily mean that exercising personal jurisdiction is

12

Case 7:15-cv-00411-MFU-RSB Document 35 Filed 02/16/16 Page 12 of 14 Pageid#: 226

unreasonable. Defendants are properly haled to court in a forum where their purposeful conduct is aimed at the forum, despite their lack of physical presence in the forum. See, e.g., Calder v. Jones, 465 U.S. 783 (1984). Additionally, litigating in Virginia would not be "so gravely difficult and inconvenient" that it places 10 South Street at a "severe disadvantage." Christian Science Bd. of Dir. v. Nolan, 259 F.3d 209, 217 (4th Cir. 2001); cf. Asahi Metal Indus., 480 U.S. at 114. (finding an unconstitutional burden where the defendant would be forced to travel from Japan and litigate in a foreign judicial system). Plainly, Virginia has an interest in the resolution of contractual disputes involving its citizens and businesses, and Wishneff has an interest in having the matter resolved here. While defending a lawsuit in Virginia is inconvenient for 10 South Street, the inconvenience is not so grave as to offend constitutional due process principles. In terms of judicial efficiency, it makes sense to have the case heard here given the relative size of the dockets here and in New York. Finally, the court is not aware of any adverse impact to fundamental substantive social policies by having this dispute resolved here. In short, the court concludes that the exercise of specific personal jurisdiction is consistent with "traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316.

## V.

In sum, this case concerns plaintiff Wishneff's performance of a contract in Virginia and defendant 10 South Street's alleged breach thereof. Although the contract dealt with tax credit financing for a real estate renovation project in Manhattan, the exercise of personal jurisdiction in this case satisfies both the Virginia long-arm statute and constitutional due process because 10 South Street knew that Wishneff would perform the contract in Virginia and the parties engaged in hundreds of email and telephone communications over a number of years. As such, the motion to dismiss will be **DENIED**.

An appropriate Order will be entered.

Entered: February 16, 2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge